# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ESTATE OF BRANDON T. JOHNSON,
et al.,

    Plaintiffs,

v.                                           Case No. 16-C-1043

MILWAUKEE COUNTY, et al.,

    Defendants.

## DECISION AND ORDER

In 2012, Brandon Johnson died while he was confined at the Milwaukee County Mental Health Complex (the "Complex"). Brandon's[1] estate and his parents bring this action under 42 U.S.C. § 1983 against Milwaukee County, five health care professionals who treated him at the Complex, and an insurance company. One of these five health-care professionals, Dr. Laurens D. Young, has filed a motion to dismiss the claims against him for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). The other defendants have filed a motion to "join" Young's motion to dismiss. I consider these motions below.

## I. ALLEGATIONS OF THE COMPLAINT

According to the allegations of the complaint, on October 3, 2012, at about 7:00 a.m., officers with the Milwaukee Police Department took Brandon into custody because he was behaving erratically. The officers brought him to the County Mental Health Complex, where he arrived at about 8:00 a.m. Later that day, staff at the Complex placed Brandon in a room on one of the Complex's units.

---

[1] Following the plaintiffs' practice, I will refer to Brandon Johnson by his first name.

At some time before 5:30 p.m., Brandon sustained a blunt force injury to his neck, possibly as a result of falling. No staff member at the Complex witnessed Brandon sustain the injury. However, at about 5:40 p.m., two staff members heard Brandon calling for help from inside his room. When they entered his room, they found him lying on the floor. Brandon told these staff members that he had fallen, that he could no longer move his legs, that he could not feel his legs, that he was unable to get up, that he was paralyzed, and that he needed to be taken to a "specialty hospital." Compl. ¶¶ 179–84. The first staff members to respond examined Brandon but were unable to determine if he was paralyzed. Other staff members also came to Brandon's room or were told about his condition.

At about 6:00 p.m., the Complex's emergency room sent one of the defendants, Dr. Graig Aders, a psychiatrist, to examine Brandon. When Aders arrived at Brandon's room, Brandon was lying on the floor. Brandon told Aders that he had fallen, was unable to move his legs, and needed to go to a specialty hospital. Aders examined Brandon, recognized that he might have suffered a neurological injury, but did not conduct a full examination that would have addressed any neurological issues. After he completed his examination, Aders told staff that they could pick Brandon up off the floor and place him in his bed. However, the staff was unable to lift Brandon into his bed. Instead, they placed a mattress on the floor and put Brandon on it. Throughout the rest of the night, Brandon repeatedly complained that he was paralyzed and needed further medical attention.

On the morning of October 4, 2012, Brandon told a certified nursing assistant that he was paralyzed and had soiled himself. The nursing assistant confirmed that

Brandon had soiled himself and bathed him. For the rest of his stay at the Complex, Brandon wore an adult diaper.

Brandon continued to complain about being paralyzed. Staff members eventually placed him in a "geriatric chair," which is similar to a wheelchair, so that they could move him around the Complex. At some point on October 4, one of the defendants, Dr. David Drake, a physician, informed a staff member that Brandon's inability to feel his legs was "psychological." Compl. ¶ 279.

On October 5, 2012, Brandon was scheduled to attend a probable-cause hearing regarding his continued detention at the Complex. However, because Brandon could not get himself out of bed, he did not attend the hearing. One of the defendants, Kelly K. Duggan, a psychologist, attended the hearing and testified that Brandon's paralysis was a "delusional belief." Compl. ¶ 333. She further testified that Brandon's inability to walk had a psychiatric explanation rather than a physical explanation. *Id.* ¶ 334.

Later that day, at about 2:00 p.m., Dr. Young, a psychiatrist, gave Brandon a "sensory examination." Compl. ¶ 349. This occurred after another defendant, Barbara Plumb, a nurse practitioner, refused to examine the plaintiff or review his chart after being informed that Brandon was refusing to walk. According to the complaint, when Young examined the plaintiff, he did not have the proper equipment to conduct the examination and had difficulty conducting it because he did so in Brandon's room, which was dark and confined, and because Brandon was lying on a mattress on the floor. The complaint further alleges that Young "did not have all the facts" regarding Brandon's circumstances. *Id.* ¶ 352. During the examination, Brandon told Young that he had numbness and tingling in his upper extremities, numbness and problems with

3

movement in his lower extremities, and could not walk.  Young determined that Brandon had some loss of sensation in his lower extremities.  Following the examination, Young diagnosed Brandon with "hysterical paralysis/psychotic presentation, rule out peripheral neuropathy."  *Id.* ¶ 356.  Young informed other staff members at the Complex that there was no need to take Brandon to a specialty hospital.  As far as the allegations of the complaint reveal, Young did not himself "rule out peripheral neuropathy" and did not make arrangements for Brandon to be seen by another doctor who could rule it out.

After Young completed his examination, Brandon remained at the Complex and was occasionally examined by other professionals, including by defendant Drake.  However, according to the allegations of the complaint, staff at the Complex did not perform a proper exam to determine whether Brandon had suffered a neurological injury.

At about 9:00 a.m. on October 6, 2012, staff members wheeled Brandon into the Complex's dayroom for breakfast.  While in the dayroom, Brandon slumped over in his chair and became nonresponsive.  Staff members initiated an emergency response and administered CPR.  Eventually, employees of the fire department arrived and took over.  However, Brandon was pronounced dead at 10:04 a.m.  An autopsy revealed that Brandon died of blood clots and lung blockage associated with having suffered a blunt force injury to his neck.

## II. DISCUSSION

Dr. Young has moved to dismiss the claims against him for failure to state a claim upon which relief can be granted.  A plaintiff must "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim

4

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must, at a minimum, "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. In construing plaintiff's complaint, I assume all factual allegations to be true but disregard statements that are conclusory. *Iqbal*, 556 U.S. 678.

The plaintiffs' primary claim against Dr. Young is for deliberate indifference to a serious medical need, which arises under the Due Process Clause of the Fourteenth Amendment and 42 U.S.C. § 1983.[2] Dr. Young contends that the plaintiffs have failed to state a claim for deliberate indifference against him. Dr. Young also notes that, in Wisconsin, claims for medical malpractice are subject to certain limitations under Chapter 655 of the Wisconsin Statutes. However, because the plaintiffs have not alleged a claim for medical malpractice against Dr. Young or any of the other defendants, it is not clear why Dr. Young focuses on Chapter 655. Any limitations that Chapter 655 places on malpractice claims would not limit the plaintiffs' rights under the Constitution or § 1983. *See Felder v. Casey*, 487 U.S. 131 (1988). Thus, Dr. Young's reliance on Chapter 655 is misplaced, and the sole question is whether the complaint states a claim for deliberate indifference against him.

---

[2] The plaintiffs include four counts in their complaint that pertain to Dr. Young, all of which arise under 42 U.S.C. § 1983: (1) failure to provide medical attention, (2) unsafe conditions of confinement, (3) breach of a duty created by a "special relationship," and (4) "state-created danger." The first two claims appear to be identical and boil down to a standard deliberate-indifference claim regarding medical care. The third and fourth claims are different, but at this point I will not discuss them because it is unclear if the plaintiffs could prevail on those claims without also proving that Dr. Young was deliberately indifferent to Brandon's serious medical needs.

A claim under § 1983 alleging deficient medical care must demonstrate two elements: (1) an objectively serious medical condition; and (2) an official's deliberate indifference to that condition. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). In the present case, Dr. Young does not contend that the plaintiffs have failed to allege that Brandon had an objectively serious medical condition. Thus, the only question is whether the plaintiffs have alleged that Dr. Young acted with deliberate indifference to that condition.

To demonstrate deliberate indifference, a plaintiff must show that the defendant acted with a sufficiently culpable state of mind, something akin to recklessness. *Id.* at 751. A defendant acts with a sufficiently culpable state of mind when he knows of a substantial risk of harm to a person and either acts or fails to act in disregard of that risk. *Id.* Deliberate indifference is more than negligence and approaches intentional wrongdoing. *Id.* In other words, "[d]eliberate indifference is not medical malpractice." *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir.2008). "A jury can infer deliberate indifference on the basis of a physician's treatment decision [when] the decision [is] so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Id.* A plaintiff can show that the professional disregarded the need only if the professional's subjective response was so inadequate that it demonstrated an absence of professional judgment, that is, that "no minimally competent professional would have so responded under those circumstances." *Arnett*, 658 F.3d at 751. A plaintiff, however, "need not prove that the [defendant] intended, hoped for, or desired the harm that transpired." *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir.2002); *see also Duckworth*, 532 F.3d at 679 ("[A]lthough deliberate means

more than negligen[ce], it is something less than purposeful."). Nor does a plaintiff need to show that he was literally ignored. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir.2005). That the plaintiff received some treatment does not foreclose his deliberate indifference claim if the treatment received was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate his condition." *Id.*

Because this is a motion to dismiss, the question is whether the complaint alleges facts from which it appears plausible that Dr. Young acted with deliberate indifference. I conclude that it does. The complaint alleges that Dr. Young examined the plaintiff knowing that he had been complaining of paralysis below the waist, and that, during the examination, Dr. Young determined that Brandon had at least some loss of sensation in his lower extremities. Compl. ¶¶ 348–57. Dr. Young then diagnosed Brandon's condition as "hysterical paralysis/psychotic presentation," which I infer means that Dr. Young thought Brandon's paralysis was psychological rather than caused by some physical injury. *Id.* ¶ 356. However, Young also noted that it was necessary to "rule out peripheral neuropathy," meaning that Young thought it was necessary to rule out a physical injury. *Id.* However, so far as the complaint reveals, Young did not himself rule out a physical injury or formulate a plan to make sure that some other doctor examined Brandon and ruled out a physical injury. Instead, the complaint alleges, Dr. Young told staff at the Complex that "there was no justification for Brandon to go to a specialty hospital." *Id.* ¶ 357. On the basis of these alleged facts, it is plausible to think that Dr. Young acted with deliberate indifference, *i.e.*, that no minimally competent psychiatrist would find it necessary to rule out a physical cause of the plaintiff's apparently psychological paralysis but fail to make a plan to ensure that

7

the physical cause is ruled out. Accordingly, Dr. Young's motion to dismiss will be denied. The remaining defendants' motion to "join" Dr. Young's motion will also be denied.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that Dr. Young's motion to dismiss the complaint is **DENIED**.

**IT IS FURTHER ORDERED** that the remaining defendants' motion to "join" Dr. Young's motion is **DENIED**.

Dated at Milwaukee, Wisconsin, this 6th day of February, 2017.

                                                                               s/ Lynn Adelman
                                                                               _____
                                                                               LYNN ADELMAN
                                                                               United States District Judge